The opinion of the Court was delivered by
Waedlaw, Ch.
The first question in this case is, whether a person under arrest by ca. sa. to compel payment of a fine imposed upon him by the Court of General Sessions and of the costs of prosecution, is entitled to the benefits of the prison bounds’ Act, passed in 1788, (5 Stat. 78)? The Act of 1787 (5 Stat. 13,) declares him “ entitled to the privilege of insolvent debtors,” with primary reference to the Act of 1759 (4 Stat. 86), which, (with exception of the unimportant Act of 1786 (4 Stat. 727,) repealing the provision, that petition for discharge must be filed within ten days after arrest,) was the only statute then of force for the relief of insolvent debtors; and with further reference to future Acts giving relief or privilege to this class. It is quite clear that one arrested for a fine and costs of prosecution is within the scope of the insolvent debtors’ Act of 1759, for that Act in describing those who shall be entitled to its benefits, uses the comprehensive terms, “ any person or persons whatsoever hereafter sued, impleaded or arrested for any duty, demand, cause or thing whatsoever,” (with exceptions immaterial in this case as to mayhem, &c.) who “shall be minded to make surrender of all his, her or their effects towards satisfaction of their debts.” In the prison bounds’ Act of 1788, however, the beneficial *527 provisions are in terms limited in the first section to those arrested by mesne process in civil action and in the third section to “ all prisoners in execution on any civil process.” If we gave this third section such rigid construction as is sometimes employed concerning penal statutes, it might be concluded that it has no relation to criminal proceedings, but the Act, at least so far as it mollifies rigorous imprisonment, is remedial, and in favor of liberty, should receive a benign and liberal interpretation, and be held to extend to. all people within the mischief of the old law not expressly excluded by the terms of the enactment. How, a ca. sa. is a “ civil process” commonly used for the execution of judgments in the Court of Common Pleas, and when employed for the collection of a fine, which is a debt to the State, and of the costs of prosecution, which are debts to public officers, it is still a civil process; also one arrested by ca. sa. for fine and costs is a “prisoner in execution.” But laying stress on the preposition “on,” it is insisted that “prisoners in execution on civil process,” means such as are imprisoned by execution founded on mesne process begun in the Court of Common Pleas. This is not a necessary construction, and it would be attended with the consequence that one imprisoned in this mode, unable to pay the costs, must be incarcerated in jail for three months or more, after he had fulfilled the punishment imposed upon him, until he could obtain relief under the insolvent debtors’ Act; for it is at least questionable whether the governor, under his pardoning power, could remit the costs of prosecution, which are debts to officers. It might thus happen that a convict for misdemeanor fined one dollar might be compelled to remain in jail for seven months, from the spring to the fall term of the Court of General Sessions. The Legislature could not have intended any such consequence, and Acts of the Legislature, like deeds and wills of the inexpert, should receive liberal interpretation in fulfilment of intention. If the interpretation of the Act of *528 1788 be doubtful ou tbe terms of tbe Act separately considered, tbe doubts are removed by subsequent legislative and judicial construction. And first as to tbe Acts of tbe Legislature. One part of a statute or any written instrument is fitly used in expounding another part, for it is right where practicable to give effect and consistency to tbe whole. Tbe end of all rules of construction is to ascertain and consummate tbe lawful purposes of the maker. On tbe same principle, all tbe statutes of tbe Legislature relating expressly to tbe same subject, are inferred to be in pursuance of tbe same policy, and (where there is no repeal) intended to be consistent in their parts. It is an established rule in tbe construction of a particular statute, that all statutes in pari ma-teria are to be collated and compared as framed with tbe same object and upon one system. Dwar. on Stat. 699. And tbe rule applies where some of them are expired or not referred to in subsequent statutes. Rex vs. Loxdale, 1 Bur. 447.
Tbe Act of 1817, (6 Stat. 66,) provides that “in case any person taken, arrested or imprisoned by mesne or final process, shall neglect or refuse to surrender his effects in favor of bis creditors and to avail himself of tbe benefits of tbe Acts aforesaid,” (being tbe Acts of 1759 and 1788, previously mentioned,) “ for tbe relief of insolvent debtors,” tbe sheriff shall not be bound to provide him with diet, &c.
Tbe Act of 1883, (6 Stat. 491,) provides that “ whenever a prisoner confined on mesne or final process applying for tbe benefit of tbe Act of 1788,” shall be accused of fraud, a jury may be impanneled, &c.
The Act of 1836, (6 Stat. 556,) makes it lawful for creditors to examine on oath “ any person applying for tbe prison bounds’ Act or other Act for tbe relief of insolvent or imprisoned debtors'’
And tbe Act of 1840, (11 Stat. 121,) concerning tbe liability of sheriffs on prison bounds bonds, speaks of him entitled to tbe bounds as “ any prisoner in execution on final process.”
*529 1 It is manifest from tbis summary, tbat tbe Legislature contemplated all persons under arrest by final process, civil or criminal, as entitled to tbe prison bounds.
The Acts of 1759 and 1788, have been frequently submitted to judicial interpretation, and tbe whole course of. decisions, has treated them as forming one scheme, so far as tbe right to tbe bounds and objections to discharge are concerned, and separate systems as to tbe mode of procedure and measure of relief. Without reviewing tbe cases, I adopt tbe language of Judge Johnson, in Dobson vs. Teasdale, 4 McC. 81. “ It is admitted on all sides tbat tbe prison bounds’ Act was intended in part as a modification of tbe insolvent debtors’ Act, and in part as a new system appertaining to tbe same subject, and according to a well-settled rule, both should be read together to arrive at tbe true interpretation.” “ The prison bounds’ Act, obviously referring to tbe rigors of tbe imprisonment required by tbe insolvent law, proceeds to enlarge tbe bounds and limits of imprisonment, and tbe third section provides tbat all persons confined by execution on any civil process shall be admitted to tbe bounds, &c. Tbat tbis section, tbe third, was intended as a modification of the insolvent debtors’ Act, as well as a part of tbe system contemplated by tbe Act to which it belongs, is, I think, most apparent. Without it, there is no provision tbat a prisoner in execution who intends to apply for tbe insolvent law shall be entitled to tbe prison bounds.” By parity of reasoning, prisoners under final process for satisfaction of a fine and costs of prosecution, under tbe Act of 1787, must be entitled to tbe benefits of tbe prison bounds’ Act; otherwise, an infant arrested by ca. sa. for tbe costs of prosecution for some petty misdemeanor which bad resulted in bis conviction and a sentence for one dollar, might pine in jail for fourteen, or more, years. Tbis cannot be tbe law. But we are not left to mere deduction, for in tbe case of The State vs. Kenny, 1 Bail. 875, it was held tbat one in confinement for tbe costs of a criminal *530 prosecution, under a sentence of tbe Court of General Session's to pay the costs (and a small fine which was paid,) and to stand committed until the costs were paid, is entitled to the benefit of the prison bounds’ Act; on the grounds, that the costs constitute a mere debt, and that otherwise the convict might be perpetually imprisoned. That is a much stronger case that the present, for in Kenny's case there was no “ execution on civil process” beyond the sentence; and except in the pardoning power of the Governor as to a fine, there is no difference between fine and costs, and if there be, the prisoner here was arrested for costs as well as fine, and that too under technically final and civil process. We are of opinion that those declared by the Act of 1787, to be “entitled to the privilege of insolvent debtors,” may avail themselves of the prison bounds’ Act of 1788.
The next point to be considered relates to the provisions of the Act of 1787, sufficiently recited in the circuit decree, requiring that if a party who has incurred a fine shall fail to pay the fine and costs of prosecution, “a writ in the nature of fieri facias shall issue,” and upon the proper return by the sheriff; “ then a writ of ca. sa. shall issue.” It does not appear by evidence, that a fi. fa. was issued against William S. Baker before he was arrested under cos. sa., and it is quite probable that no fi.fa. was ever issued. If the ca. sa. were absolutely void, and if we have authority to adjudge that such is the fact, it may be conceded that the assignment to the plaintiff is void as obtained by the duress of unlawful imprisonment. But without determining the questions of waiver and estoppel by judgment of the commissioner of special bail, which have been discussed before us, two considerations seem fatal to the notion that the ca. sa. was absolutely void ; first, that it belongs to the Court of Law to annul a process issued under its authority, and secondly, that a departure from the' prescribed order of executions is a mere irregularity. We are now sitting as a Court of Equity, and are invoked to de *531 clare void a process of tbe Court of Law wbicb subsists iu unimpaired vigor. It is firmly established that tbe judgment of a court of competent jurisdiction, obtained without fraud, cannot be upset and vacated collaterally in any other tribunal, and must be recognized as valid until avoided upon direct application to the court which pronounced the judgment. Everything necessary to the validity of the judgment must be presumed by other tribunals. We must'here pronounce that a fi.fa. was regularly issued and returned according to the prescriptions of the Act of 1787, or that it was adjudged by the Court of Law to be unnecessary. It is a mistake of the answer that the defendant, "W. S. Baker, “ could not do otherwise than to seek his discharge from confinement by due process of law,” if it be intended that this due process of law was confined to the remedies afforded by the insolvent debtors’ Act and the prison bounds’ Act; for he might have applied to one of the Law Judges to set aside or stay the execution against his person; as by the Act of 1818, (7 Stat. 321,) these judges have as full power at chambers as in open court to hear and determine such a motion.
Again we suppose, if it were our province to adjudge the matter, that the Act of 1787, prescribing the sequence of execution againt the person to execution against the property, is merely directory, and that a breach of the direction works no forfeiture or invalidity of the thing done. The prominent distinction between directory and imperative statutes, is that affirmative words make a statute directory, and negative or exclusive words make it imperative. Rex vs. Leicester, 7 B. & C. 12. Affirmative words may be so peremptory and exclusive of discretion as to make a statute imperative, contrary to the general rule. Thus, in Davidson vs. Gill, 1 East, 64, on the construction of a statute empowering two justices of the peace to close old and set out néw foot-ways, and prescribing expressly the form of the order to be used by them in such case, and requiring that this form “ shall be used on all *532 occasions, with such additions, and variations only as may be necessary to adapt it to the particular exigency of the case,” it was held by the Court of King’s Bench, principally on the force of the word only, which is really negative in meaning, that a material variance in the order from the form prescribed was fatal to the attempt of the Justices to deprive the public of a right previously enjoyed. This case, the strongest cited to us, is hardly an exception to the rule as to the effect of affirmative words. In the statute of 1787, the words are merely affirmative and directory, without any expression of exclusiveness or avoidance. The practice for a long time has been very general to issue the ca. sa.; in the first instance, and it has probably proceeded from the desire of the officers having fees in prosecutions to fix the liability of the State for payment, and from the desire of prisoners to abbreviate their imprisonment, and obtain discharge as soon as practicable. Without meaning to approve any departure by the officers of court from the requirements of the Legislature, we must pronounce that there was no such departure in this matter as rendered absolutely void the subsequent proceedings. It is further urged that granting the regularity of the procedure against him, still the defendant is not bound by his assignment because he was then and is now. an infant. It is superfluous to cite authorities for the doctrine that an infant is liable for his trespasses, misdemeanors and crimes, and responsible in person and property for fines and damages adjudged against him. In such case, he is treated as an adult both as to liability and as to remedy. It would be terribly harsh towards him to consider him equally as an adult liable for his torts, and debts arising from torts, and still not competent to avail himself of the remedies and relief attainable by an adult in like case. No person of any age can obtain discharge under our insolvent laws without executing an assignment, and if an infant be incapable of executing an assignment he may be imprisoned during the whole of his *533 minority. In general an infant is bound by any acf which he rightfully performs, and might be compelled by law to perform, or any act manifestly for his benefit.
An infant trustee may be coerced to convey, and an infant tenant in common to make partition. He may contract marriage, and as an incident to the principal contract may execute a marriage settlement, according to our law, although this is disputed in England as to real estate. It is doubtful whether an infant can take the benefit of the existing English statutes for relief of insolvent debtors, which require a warrant of attorney for entering up judgment against him for the amount o'f his debts, but under former statutes which required recognizances for the amount of his debts, he was allowed to give recognizances and be discharged; 2 McPherson, Inf., 491. Recognizances are matters of record and voidable by an infant during his minority on audita querela; Co. Litt. 308, b. It was observed in Ex parte Deacon, 5 Barn. & Aid. 759, where the right of a married woman to discharge under the insolvent laws was in question, that “ a minor may make a deed for his own benefit.” Our Acts require as prerequisite to discharge the execution of a deed of assignment merely and not warrant of attorney to confess judgment, recognizance or any matter of record. In the case of The People vs. Mullin, 25 Wendell, 698, Nelson, C. J., held, that an infant as well as an adult was entitled to relief under a New York law of like character with ours, saying that the relief from imprisonment was so highly beneficial to the petitioner, that his act in making an assignment must in law be regarded as valid notwithstanding his nonage. We approve this decision.
It is further urged, that the State is an unsuitable assignee, not to be aided by the Court because it cannot be compelled by suit to distribute rightly the funds of which it is trustee for creditors. If this be true broadly, the State could take nothing by the voluntary assignment of its debtor. Granting *534 that tbe State cannot be sued, still for any violation of trust, relief might be obtained through the Legislature by application in the nature of a petition of right. Besides the Court of Equity would change the trustee upon sufficient reasons shown. Again, in this case the State is assignee under the prison bounds’ Act of so much only of the assignor’s estate as will satisfy the debt to the State, and the Court will not aid it beyond the amount of the debt, and there can be no controversy as to the distribution of the surplus. If the foregoing views be unsound, as to the rights of the State as assignee, why should not the State be allowed to prosecute its claim as a general creditor of William S. Baker ? His debt to the State by fine certainly subsists. His insolvency as to any legal estate, is alleged in the bill, admitted in the answer, and demonstrated by the proceedings under the ca. sa., and under such circumstances where a creditor has no legal remedy, he is entitled in equity to pursue the equitable estate of his debtor; Pettus vs. Smith, 4 Rich. Eq. 197. But it is unnecessary to elaborate this point.
It is ordered and decreed that the administrators of Samuel S. .Baker’s account with the plaintiff for so much of the share of William S. Baker in the estate of the said Samuel as may be necessary to satisfy the claim of the plaintiff, and the commissioner is ordered to take the account.
It is further ordered that the Circuit decree be modified in conformity to this opinion.
JohNstoN, Dunkin and Dargan, C.C., and O’Neall, Wardlaw, Withers, Whither, Glover and Munro, J.J., concurred.

Decree reversed.